UNPUBLISHED

# UNITED STATES COURT OF APPEALS

### FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

v.

GLENN DEXTER POWELL,
  *Defendant-Appellant.*

No. 01-4920

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
James C. Turk, District Judge.
(CR-00-85)

Submitted: July 15, 2002

Decided: July 29, 2002

Before NIEMEYER, KING, and GREGORY, Circuit Judges.

_____

Affirmed in part and reversed in part by unpublished per curiam opinion.

_____

## COUNSEL

Terry N. Grimes, TERRY N. GRIMES, P.C., Roanoke, Virginia, for Appellant. John L. Brownlee, United States Attorney, Craig J. Jacobsen, Assistant United States Attorney, Roanoke, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

**OPINION**

PER CURIAM:

Glenn Dexter Powell was convicted by a jury of abducting his estranged wife, Kimberly Dawn Powell, and with use of a firearm during the abduction. The evidence showed that Powell kidnapped Kimberly and their three children at gunpoint from Kimberly's stepfather's home. The district court imposed consecutive sentences totalling 162 months and ordered Powell to pay restitution to Kimberly in the amount of $8512.43, representing the cost of counseling sessions for Kimberly and her children. Powell timely appealed.

I.

Powell first challenges the district court's denial of his motion for a continuance based on his mental state. The denial of a motion for a continuance is reviewed for an abuse of discretion. *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983). A trial court abuses its discretion when it denies a continuance based upon an unreasonable and arbitrary insistence on expeditiousness. *Id.* Here, the court found a continuance unnecessary since Powell was competent to stand trial. A person is competent to stand trial if (1) he can consult with his lawyer with a reasonable degree of rational understanding and (2) he has a rational as well as factual understanding of the proceedings against him. *Penry v. Lynaugh*, 492 U.S. 302, 333 (1989).

On appeal, Powell essentially argues that, because he had been diagnosed as depressed and because his medication had ceased after he was transferred from Butner, a continuance should have been granted. However, presence of a disease or condition is not the test for competency, and Powell fails to analyze the applicable test. In addition, the Forensic Evaluation from Butner opined that Powell suffered from a minimal level of depression during the incident, but that his symptoms had "resolved" since his arrival at the facility. Further-

more, contrary to his testimony, Powell's medical records do not reveal that he was, in fact, ever prescribed medication for his depression. Because there is no indication in the record that Powell was incompetent to stand trial, the district court did not abuse its discretion in denying his motion for a continuance.

## II.

Powell next argues that the district court made numerous errors in the admission of evidence. The evidentiary rulings of a district court are given substantial deference. The district court commits a clear abuse of discretion only when the court acts arbitrarily or irrationally. *United States v. Moore*, 27 F.3d 969, 974 (4th Cir. 1994).

Over Powell's objection, the district court permitted Kimberly to testify that she left the marital home because of Powell's infidelities and gambling problem. On appeal, Powell argues that this evidence was irrelevant and prejudicial. However, in his opening argument, defense counsel stated that, just two days before the separation, Powell and Kimberly were attempting to adopt a fourth child. Counsel appears to have raised this issue to infer that the separation came as a surprise to Powell and impacted on his mental state. Thus, Kimberly's testimony as to why the marriage collapsed was relevant to dispute Powell's theory of the case, as well as to provide necessary background on the marriage and give a complete picture of the situation.

Powell next challenges the admission of testimony concerning the previous abductions of his children in 1989 and 1993. Rule 404(b) of the Federal Rules of Evidence prohibits admission of prior bad acts evidence to show later action in conformity therewith. However, Rule 404(b) provides for exclusion of such evidence only if it is admitted to show character. It does not require exclusion of such evidence offered to establish opportunity, motive, intent, preparation, plan, knowledge, identity, or absence of mistake. Fed. R. Evid. 404(b). Prior act evidence of this nature is admissible under Rule 404(b) if the evidence is (1) relevant to some issue other than character; (2) necessary to prove an element of the crime charged; and (3) reliable. *Id.*

Powell has failed to show that the court's admission of the Rule 404(b) evidence was improper. Powell opened the door to the evidence, after being specifically warned by the district court, by cross-examining Kimberly regarding his defenses: (1) that he abducted his children to protect them from molestation at the hands of Kimberly's stepfather and (2) that there was actually no abduction, rather Kimberly and the children voluntarily accompanied him on a sight-seeing trip to Washington. The court's admission of the evidence was proper, because it furnished part of the context of the crime that explained and rebutted Powell's reasons for abducting his children. Thus, it was admitted for the purpose of showing Powell's plan and motive, as well as the absence of his alleged belief that the abduction was actually a consensual vacation. Accordingly, the district court's admission of the evidence was neither arbitrary nor irrational.

Powell next claims that Sheila Stoner's testimony regarding her husband's adoption of Powell's son Aaron was irrelevant and the court erred in denying his motion for mistrial. However, the district court sustained Powell's objection and instructed the jury to disregard Stoner's testimony pertaining to the adoption. Jurors are presumed to follow instructions. *United States v. Love*, 134 F.3d 595, 603 (4th Cir. 1998). Thus, there was no error.

Powell next argues that the district court erred in overruling defense counsel's objection to the cross-examination of Powell regarding whether he had ever visited Aaron or paid child support. The extent and scope of cross-examination are within the sound discretion of the trial judge. *United States v. McMillon*, 14 F.3d 948, 956 (4th Cir. 1994). Here, Powell testified on direct that he loved Aaron and missed him, and his testimony on direct tended to portray him as a caring and involved father. As such, the cross-examination was proper to impeach Powell's veracity and credibility.

Powell next claims that the Government improperly questioned him about his relationship with God and that the questions were argumentative. However, Powell himself first brought up the fact that he had "found God." The Government then asked questions seeking to demonstrate a pattern in the three abductions: Powell would abduct his children, then tell his wife at the time that he had "found God," and be forgiven. Moreover, the questions were not argumentative.

Instead, they were asked several times, because Powell refused to answer.

Contrary to Powell's assertions, the Government's questions were not designed to show that Powell's religious beliefs impaired his credibility, *see* Fed. R. Evid. 610, but rather the questions illustrated Powell's pattern of behavior and impeached Powell's attempt to paint himself as a pious person. Thus, the district court properly allowed the Government to pursue this line of questioning.

Powell contends that the district court improperly permitted FBI Special Agent Slater to testify that the FBI gets involved with kidnapping cases when twenty-four hours have passed and it is "automatically assumed that state lines have been crossed, thereby, giving us federal jurisdiction." Powell asserts that this testimony was tantamount to instructing the jury that state lines had been crossed in this case. Powell is mistaken. The agent's testimony merely provided the background for how the FBI was brought into the case. The testimony did not purport to be the standard of law for this specific case, and indeed, the court instructed the jury that they were required to find that Powell transported Kimberly in interstate commerce. Thus, there was no error.

## III.

Powell asserts that the court's refusal to question jurors about alleged comments made outside the courtroom during recess was error. In determining whether to conduct a hearing regarding possible jury contamination, the court must balance the probable harm resulting from the emphasis such action would place upon the misconduct and the disruption involved in conducting a hearing against the likely extent and gravity of the prejudice generated by the misconduct. *United States v. Ramos*, 71 F.3d 1150, 1153 (5th Cir. 1996). In addition, because the trial court is in a better position to judge the mood at trial and the predilections of the jury, the trial court is entitled to broad discretion. *Id.*

Here, the district court did not abuse its discretion. There was no evidence that the jurors discussed the merits of the case. In addition, when the jury returned, the court cautioned them about not discussing

the case with anyone. Because there was no substantial reason to fear prejudice from any of the overheard comments, there was no error.

IV.

Powell next contends that the evidence was insufficient to support his conviction for kidnapping Kimberly. To support a conviction, "the evidence, when viewed in the light most favorable to the government, must be sufficient for a rational trier of fact to have found the essential elements of the crime beyond a reasonable doubt." *United States v. Brewer*, 1 F.3d 1430, 1437 (4th Cir. 1993). Circumstantial as well as direct evidence is considered, and the Government is given the benefit of all reasonable inferences from the facts proven to those sought to be established. *United States v. Tresvant*, 677 F.2d 1018, 1021 (4th Cir. 1982). To sustain a conviction under the federal kidnapping statute, the Government must establish four essential elements: "1) the transportation in interstate commerce; 2) of an unconsenting person who is; 3) held for ransom, reward or otherwise; and 4) the acts were committed knowingly and willingly." *United States v. Osborne*, 68 F.3d 94, 100 (5th Cir. 1995).

Powell maintains that the prosecution presented insufficient evidence at trial to support his conviction for kidnapping because it failed to show that Kimberly was transported in interstate commerce against her will. Powell points to Kimberly's testimony that Powell told her, after abducting her and the children, that they needed to get out of Virginia. They drove into D.C., and Powell wanted to get a motel room. At that point, Kimberly testified that she suggested driving into Maryland where it would be cheaper and they would be able to afford a room. Powell asserts that, since they drove into Maryland at Kimberly's suggestion, the Government failed to prove that the interstate transportation was against Kimberly's will.

Powell's argument is without merit. First, Kimberly testified that she had been abducted at gunpoint and threatened on several occasions. Thus, Kimberly's suggestion of driving to Maryland must be considered in this context and could easily be viewed by a reasonable jury as merely an attempt to placate Powell, rather than evidence that Kimberly was a consenting victim. Next, even if crossing into Maryland was consensual, there is no evidence that Kimberly consented to

driving to D.C. Since that transportation alone was sufficient to satisfy the statute, Powell's argument fails.

## V.

Powell next argues that the district court erred in failing to instruct the jury with his proposed consent instruction. In reviewing the adequacy of the district court's chosen jury instructions, we allow the district court much discretion and will not reverse as long as the instructions, taken as a whole, adequately state the controlling law. *United States v. Hassouneh*, 199 F.3d 175, 181 (4th Cir. 2000). The district court did not abuse its discretion in declining to give Powell's consent instruction, because the consent of the victim was already covered by other portions of the instructions given to the jury. Powell does not contend that the instructions given were incorrect. Thus, his claim is meritless.

## VI.

Next, Powell challenges the district court's decision to deny Powell's request for a justification defense instruction. Powell contended that he abducted Kimberly and his children in an attempt to save the children from molestation at the hands of Kimberly's stepfather. A district court properly refuses to instruct the jury on a defense that, wholly or regarding one element thereof, lacks support in the record. *United States v. Sarno*, 24 F.3d 618, 621 (4th Cir. 1994). To establish such support regarding a justification defense, a defendant must produce evidence that would allow a factfinder to conclude that he:

(1)   was protecting someone from an unlawful and present threat of death or serious bodily injury;

(2)   did not recklessly place himself in a situation where he would be forced to engage in criminal conduct;

(3)   had no reasonable legal alternative (to both the criminal act and the avoidance of the threatened harm); and

(4)   there existed a direct causal relationship between the criminal action and the avoidance of the threatened harm.

*United States v. Crittendon*, 883 F.2d 326, 330 (4th Cir. 1989).

Here, the evidence did not support a justification instruction. First, while there was some evidence that Kimberly's stepfather had made inappropriate comments to her when she was a child, there was absolutely no evidence of an immediate threat of bodily injury to the children. In addition, there was no evidence that Powell's use of force was necessary, since he had ample opportunity to raise his concerns before the family court, social services, or the police, none of which he did. Thus, the district court did not err in refusing to instruct the jury on a justification defense.

## VII.

Powell moved for a new trial based on the following: (1) the district court erred in admitting evidence concerning the 1989 and 1993 abductions of Powell's children and (2) the Government improperly compared Powell to Ted Bundy in its closing argument. For the reasons discussed above, the district court properly admitted evidence of the prior abductions.

Regarding the closing argument, Powell's argument is misleading. The Government actually was discussing the testimony of Powell's character witnesses and stated that "family members and friends see only one (1) side of a person." The Government then referenced Ted Bundy as another example of a situation where friends and family members did not know someone as well as they thought they did. Since there is nothing improper about this statement, the district court did not abuse its discretion in denying Powell's motion for a new trial. *See United States v. Singh*, 54 F.3d 1182, 1190 (4th Cir. 1995) (standard of review).

## VIII.

Powell next argues that the district court erred by enhancing his offense level for providing perjurious testimony during his trial, pursuant to *U.S. Sentencing Guidelines Manual* § 3C1.1 (2000). Under USSG § 3C1.1, a defendant's offense level will be increased by two levels if he willfully obstructed or impeded, or attempted to obstruct

or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense. The commentary to this provision states that committing perjury may provide a basis for applying the upward departure. USSG § 3C1.1 comment. (n.4(b)). Whether Powell's conduct obstructed justice is a factual determination that this Court reviews under the clearly erroneous standard of review. *United States v. Self*, 132 F.3d 1039, 1041 (4th Cir. 1997).

If the defendant objects to the enhancement for committing perjury, the district court must make independent findings necessary to establish that the testimony was perjurious. *United States v. Stotts*, 113 F.3d 493, 497 (4th Cir. 1997). It is preferable for the court to address, in a separate finding, each individual element of perjury: (1) false testimony; (2) concerning a material matter; and (3) made with the intent to obstruct justice, rather than as a result of confusion or mistake. *United States v. Dunnigan*, 507 U.S. 87, 94 (1993). However, if the court's singular finding encompasses all of these necessary factual predicates, it is sufficiently justified. *Id.* at 95.

Here, the district court did not make detailed findings. Instead, the district court found that Powell's testimony that he was merely taking his family on a vacation "just wasn't true." In addition, the court found Powell's testimony on the whole "just wasn't credible at all." Moreover, the Government outlined the specific portions of Powell's testimony (the "vacation" defense and his claim that he never brandished his gun) that supported the enhancement. Powell, on the other hand, made no argument that his testimony concerned immaterial matters or was the result of confusion or mistake. Given the arguments and the court's determination that Powell had clearly given false testimony, we find that the court's conclusions encompassed all the necessary factual predicates. *See United States v. Cook*, 76 F.3d 596, 605-06 (4th Cir. 1996) (holding that court's finding that defendant had not testified truthfully and that his testimony was strained regarding material facts to which he had already confessed was sufficient to uphold § 3C1.1 enhancement).

## IX.

Next, Powell asserts that the district court erred in assigning three points to his criminal history based on a 1990 larceny conviction. In

order to count as a prior felony conviction for criminal history purposes, the sentence for that conviction must exceed one year and one month and must have resulted in the defendant being incarcerated for a period of time within the fifteen years preceding the commencement of the instant offense. USSG § 4A1.2(e)(1). Powell asserts that the sentence for his larceny conviction was neither lengthy enough nor recent enough to qualify under § 4A1.2(e).

At sentencing, Powell testified that he served only three to four weeks for his larceny conviction. In response, the Government submitted a copy of the North Carolina Administrative Office of the Courts docket sheet for the conviction, which showed that Powell was ordered confined for two years. In addition, the district court had already found Powell to be untruthful. Thus, weighing the documentary evidence against Powell's testimony, the district court's ruling was not clearly erroneous. In addition, as Powell committed the instant offense on November 16, 2000, the prior conviction was clearly within the fifteen year window provided for in USSG § 4A1.2(e)(1).

## X.

Finally, Powell contends that the district court erred in ordering him to pay $8512.32 in restitution as a result of psychological and psychiatric counseling and hospitalization received by Kimberly and two of their children. The Government concedes error, noting that neither Kimberly nor the children suffered any bodily injury or physical injury as required under 18 U.S.C.A. § 3663A (West 2000 & Supp. 2002). As the Government correctly notes, under § 3663A, restitution orders can only cover psychological care when there has been a bodily injury. *United States v. Follet*, 269 F.3d 996, 1001 (9th Cir. 2001). We therefore reverse the court's restitution order.

Based on the foregoing, we affirm Powell's convictions, reverse the restitution order, and affirm the remainder of Powell's sentence. We dispense with oral argument, because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

*AFFIRMED IN PART; REVERSED IN PART*